## *SUPREME JUDICIAL COURT*

#### IN THE COUNTY OF

## OXFORD.

### *AUGUST TERM,*

### 1823.

---

### STOWELL *v.* PIKE & ALS.

If the mortgagor of land, being in possession, cut down and carry away timber-trees growing thereon, he is liable to the mortgagee, in an action of trespass *quare clausum fregit,* for their value.

If a lot of wild land be purchased, and mortgaged to secure payment of the purchase-money, *quære* whether a general usage and custom in the country for the purchaser in such cases to fell the trees and clear the land, may be considered as amounting to a license from the mortgagee so to do?

In an action of trespass *quare clausum fregit,* the case was thus:—The plaintiff, by his deed dated *September* 15, 1819, bargained and sold the close described in the writ, to one *Bickford,* in fee, taking from *Bickford* at the same time a mortgage of the same land to secure the payment of the purchase-money, for which *Bickford* also gave his notes of hand to the plaintiff, amounting to three hundred and thirty dollars, payable at different periods in the course of two years and a half, with interest. In the course of the spring following *Bickford* paid his first instalment;—and in *December* 1820 he sold all the timber then standing on the premises, to the value of two hundred and thirty dollars, to the defendant *Pike* and others, who, with the other defendants in their employment, without license from the plaintiff cut it down and converted it to their own use;—for which cutting this action was brought. *Bickford* continued in possession of the premises from the date of his deed till after the cutting of the timber, when the plaintiff entered upon him

for condition broken; the residue of the purchase-money being still due.

Upon these facts the parties submitted the cause to the decision of the Court, the defendants waiving any objection to the form of action.

*L. Whitman* for the defendants.

This case is distinguishable from *Smith v. Goodwin,* decided lately in *Cumberland* [*ante, p.* 173.] in the circumstance of *Bickford's* being in possession of the premises at the time of the supposed trespass, and in his having paid all the purchase-money then due. The decisions in *Massachusetts* are against any action in favour of the mortgagee for an injury to the mortgaged premises while in the possession of the mortgagor, and so situated as to render it doubtful whether the mortgagee will claim to hold the land or rely on his personal security. *Hatch v. Dwight & al.* 17 *Mass.* 289.

In this country the mortgagor, under circumstances like the present, must from the usage of the country, even where no express agreement is proved, be considered as having license from the mortgagee to do the acts for which these defendants are sued. Here the deed and mortgage were of even date,—the land was what is termed a wild lot,—and the acts done by the defendants were such only as are necessary to reduce any similar lot to a state of cultivation and productiveness. It must have been known by the plaintiff that such was the course to be adopted, else no motive can be assigned for the purchase. Such has been the well known and undeviating usage, from the first settlement of this country, respecting lands thus purchased, and it ought not to be disturbed upon light grounds. It is a reasonable practice, favourable to agriculture, and deserving on the score of public policy, of all the encouragement which Courts of justice can give.

*Greenleaf* and *Lincoln,* for the plaintiff.

The action is substantially by the mortgagee against the mortgagor, for stripping the land of its *timber.* The trees were *fixtures,* and therefore not removeable by the mortgagor;—and this whether erected by him or not. *Elwes v. Maw,* 3 *East.* 38. *Smith v. Goodwin, ante p.* 173.

To the objection drawn from the general practice in these cases, and from public policy,—it is answered—1. This was not a *clearing up* of the lot, for the purpose of agriculture, but a *sale* of all the *timber* then standing on it,—and so is not the case supposed.—2. Whatever may be the rule of equity or good policy, the mortgagor is not brought within its principle, because he never applied to the discharge of his debt due for the land, any part of the money obtained by the sale of the timber. Further, the indulgence here claimed amounts to a *license*, which is expressly negatived in the case stated. The mischiefs anticipated by the defendants may always be avoided in practice, by pleading a license, and relying for proof on the general usage, which the jury will determine.

MELLEN C. J. delivered the opinion of the Court as follows :

If *A.* mortgage lands to *B.* in fee, the *legal estate* is considered to be in *B.* as between him and *A.* and those claiming under *A* :—but as to all the world but *B.*, *A* is considered as seised of the legal estate, and so may convey to *C.* subject, however, to the mortgage. *Blaney v. Bearce, ante, p.* 132. For this reason *B.* may maintain trespass against *A.* and those claiming under him, because *A's* possession is in submission to *B's* title, and is in fact the possession of *B.* In *Newhall v. Wright*, 3 *Mass.* 138. *Parsons, C. J.* delivering the opinion of the Court, says— " It is very clear that when a man, seised of lands in fee, shall " mortgage them, if there be no agreement that the mortgagor " shall retain the possession, the mortgagee may enter imme- " diately—put the mortgagor out of possession, and receive " the profits ; and if the mortgagor refuses to quit the posses- " sion, the mortgagee may *consider him as a trespasser*, and may " *maintain an action of trespass* against him, or he may in a writ " of entry recover against him as a disseisor." There is nothing then in the relation between mortgagor and mortgagee, inconsistent with the nature of an action of trespass by the latter against the former ;—and surely a mortgagor, or one claiming under him, is not less liable for an injury to the mortgagee by cutting down and carrying away timber and wood from the premises, than he would be by merely withholding the possession, and receiving the rents and profits to his own use. *Union Bank v.*

*Emerson,* 15 *Mass.* 159. *Bro. Tr.* 55, 362. 5 *Rep.* 13. *Cro. Eliz.* 784. We need not however rely on these cases, or decide on the form of action, as the parties have waived all objections to form, if any exist. But on these principles we decided the case of *Smith v. Goodwin,* cited for the plaintiff; and on the same principles we think the action maintainable, unless the alleged usage and general understanding with respect to felling trees and clearing wild lands though mortgaged to secure payment of the purchase-money should be considered as preventing the application of those principles to a case like the present. It was urged by the defendant's counsel that such usage and general tacit understanding are equal to a license from the mortgagee to the mortgagor or his assignee, to do the acts which are charged in this action as a trespass. The facts in the case do not present this question. We have no means of knowing whether any such usage and general understanding exist. The argument of the counsel therefore cannot avail, as it does not apply. If such usage and understanding existed at the time of the transactions of which we have been speaking, and were considered as amounting to a license, and pleadable as such against the deed in question, they should have been disclosed in the form of a special plea, and the question arising thereon left to the decision of the jury. As the case stands the plaintiff must have judgment for the value of the timber and costs, according to the agreement of the parties.

*Note.*—In this case PREBLE J. gave no opinion.